E. MARTIN ESTRADA
United States Attorney
BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office
JENNIFER L. WAIER (Cal. Bar No. 209813)
Assistant United States Attorney
    United States Courthouse
    411 West 4th Street, Suite 8000
    Santa Ana, California 927012
    Telephone:  (714) 338-3550
    Facsimile:  (714) 338-3708
    E-mail:     Jennifer.Waier@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. CR 23-341-JAK |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT OLUFUNMI NWAAMAKA OBAZE |
| v. | |
| OLUFUNMI NWAAMAKA OBAZE, | |
| Defendant. | |

1. This constitutes the plea agreement between OLUFUNMI NWAAMAKA OBAZE ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

    a. At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts eighteen and nineteen of the indictment in United States v. Olufunmi Nwaamaka

Obaze, CR No. 23-341-JAK, which charges defendant with wire fraud and money laundering in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1957.

    b. Not contest facts agreed to in this agreement.

    c. Abide by all agreements regarding sentencing contained in this agreement.

    d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

    e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

    f. Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

    g. Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

<u>THE USAO'S OBLIGATIONS</u>

3. The USAO agrees to:

    a. Not contest facts agreed to in this agreement.

    b. Abide by all agreements regarding sentencing contained in this agreement.

    c. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to

U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

       d.    Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 17 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

       e.    At the time of sentencing, move to dismiss the remaining counts of the indictment.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

NATURE OF THE OFFENSES

    4.    Defendant understands that for defendant to be guilty of the crime charged in count eighteen of the information, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, the following must be true: (1) defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud; that is, the intent to deceive and

3

cheat; and (4) defendant used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.

5. Defendant understands that for defendant to be guilty of the crime charged in count nineteen, that is, money laundering, in violation of 18 U.S.C. § 1957, the following must be true: (1) defendant knowingly engaged or attempted to engage in a monetary transaction; (2) defendant knew the transaction involved criminally derived property; (3) the property had a value greater than $10,000; (4) the property was, in fact, derived from wire fraud; and (5) the transaction occurred in the United States.

## PENALTIES AND RESTITUTION

6. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343 is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1957, is: 10 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 30 years' imprisonment; a 3-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the

offenses, whichever is greatest; and a mandatory special assessment of $200.

9. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offenses that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

10. Defendant understands that defendant will be required to pay full restitution to the victim of the offenses to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty. The parties currently believe that the applicable amount of restitution is approximately $707,290.52, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic

rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

12. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

## FACTUAL BASIS

13. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support her pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 15 below but

is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

From February 2020 through July 2021, defendant was employed as the Director of Community at Company A, an entertainment marketing company located in Los Angeles and Burbank, California. As part of her duties, defendant was given access to Company A's American Express accounts to purchase social media on Facebook and Instagram platforms for Company A's clients. American Express's computer servers were located in Greensboro, North Carolina.

To purportedly purchase social medial ads, defendant opened a merchant account with Stripe Inc. ("Stripe"), a company that permits users to engage in online payment processing. Defendant linked the Stripe merchant account to her personal account at Wells Fargo Bank ("Wells Fargo").

Beginning in or around May 2020, and continuing to in or around November 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant, knowingly and with the intent to defraud, devised and executed a scheme to defraud and obtain money from Company A by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts in relation to an embezzlement scheme.

Specifically, defendant opened a Stripe merchant account in the name of Company A purportedly to fund internet marketing campaigns. Defendant listed her personal residence address and cellular telephone number as the points of contact.

Using this Stripe merchant account, defendant purportedly charged legitimate marketing expenses to Company A's American Express

accounts. When charging the American Express accounts through the Stripe merchant account, defendant would attribute the charges to certain marketing campaigns for Company A's clients.

Instead of using the funds for legitimate business and marketing purposes, defendant transferred the funds from the Stripe account to her personal bank account at Wells Fargo. Defendant used the funds for her own personal purposes, including lavish vacations, online trading, rent for a luxury apartment, and lease payments for a Mercedes-Benz.

After she resigned from Company A, defendant continued to charge Company A's American Express account through the Stripe account and using the funds for her own personal purposes.

By devising and executing the fraudulent scheme, defendant fraudulently obtained over $700,000 from Company A's American Express accounts.

In furtherance of the scheme, on or about November 4, 2021, when defendant was no longer employed at Company A, defendant caused a $2,500 charge to American Express account ending in 72005 for services that were not rendered. The wire traveled from Los Angeles, California through American Express servers in Greensboro, North Carolina.

On or about January 26, 2021, defendant knowingly transferred $12,000, which she knew were the proceeds of the wire fraud scheme above, from her Wells Fargo Account to Morren and Poleon in Willemstad, Curaçao for a vacation home rental.

## SENTENCING FACTORS

14. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing

8

Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

15.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss > $550,000 | +14 | U.S.S.G. § 2B1.1(b)(1)(H) |
| Money Laundering: | +1 | U.S.S.G. §2S1.1(b)(2)(A) |
| 0 Point Offender: | -2 | U.S.S.G. §4C1.1(a)[1] |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(a)&(b) |
| Total Offense Level: | 17 | |

16.  The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an

---

[1] Based on the information known to the parties, defendant qualifies for the Zero-Point Offender adjustment set forth in USSG § 4C1.1.  The parties understand and agree, however, that their stipulation to this adjustment is conditioned on defendant's eligibility for the adjustment based on her lack of scorable criminal history under the United States Sentencing Guidelines.  In the event that additional information comes to light demonstrating that defendant has in fact sustained prior convictions rendering her ineligible, the parties agree that the government is free to recommend that this Court not include the adjustment in its calculation of defendant's Total Offense Level.

9

additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 2 are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraph 26 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

17.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

18.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

19.  Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.  The right to persist in pleas of not guilty.

    b.  The right to a speedy and public trial by jury.

      c.    The right to be represented by counsel – and if necessary have the court appoint counsel - at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the court appoint counsel – at every other stage of the proceeding.

      d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.    The right to confront and cross-examine witnesses against defendant.

      f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

      g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

      h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

20.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that

the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

21. Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 17 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $707,290.52; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

22. Defendant also gives up any right to bring a postconviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to,

12

arguments that the statute to which defendant is pleading guilty is unconstitutional, that newly discovered evidence purportedly supports defendant's innocence, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

23.  The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $707,290.52.

## RESULT OF WITHDRAWAL OF GUILTY PLEAS

24.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

25. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

26. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas and (b) the USAO will be relieved of all its obligations under this agreement.

27. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was not filed as a result of this agreement, then:

    a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

    b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the

extent that such defenses existed as of the date of defendant's signing this agreement.

      c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

28. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

29. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to

maintain its view that the calculations in paragraph 15 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

30.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

31.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

/ / /
/ / /
/ / /
/ / /

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

32. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_____     2/13/2024
JENNIFER L. WAIER                      Date
Assistant United States Attorney

_____     02/09/2024
OLUFUNMI NWAAMAKA OBAZE                Date
Defendant

_____     02/09/2024
VIVIAN MCRAYAH OBIAMALU                Date
Attorney for Defendant
OLUFUNMI NWAAMAKA OBAZE

17

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____     02/09/2024
OLUFUNMI NWAAMAKA OBAZE                Date
Defendant

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am OLUFUNMI NWAAMAKA OBAZE's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of the guilty pleas pursuant to this agreement.

_____          2/9/24
VIVIAN MCPAYAH OBIAMALU             Date
Attorney for Defendant
OLUFUNMI NWAAMAKA OBAZE